HAMILTON, Circuit Judge,
dissenting from denial of en banc review.
The panel opinion in Rubin v. Islamic Republic of Iran, No. 14-1935, both creates a circuit split and overrules, in part, two recent decisions of this court. Either step by itself would ordinarily trigger our Circuit Rule 40(e), which requires circulation within the court before publication to see if a majority of active judges wish to rehear the case en banc.
In this case, a majority of active judges do not even have the opportunity to vote. A majority are disqualified, so it is impossible to hear this case en banc. In this rare situation, the panel apparently has the power to overrule circuit precedent and to create a circuit split without meaningful Rule 40(e) review. Yet that step is a mistake that should not go without comment. Also, most Rule 40(e) decisions settle the legal issue in the circuit. In this rare situation, one panel’s decision to overrule another’s decisions should not be treated as settling the legal issue in this circuit. I respectfully dissent.
The issue is whether a provision of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1610(g), offers a freestanding basis for executing judgments against state sponsors of terrorism, independent of § 1610(a) and (b). As dry and technical as that sounds, the issue has important practical consequences for victims of state-sponsored terrorism. Most important, the Rubin panel’s view restricts execution to foreign sovereign assets that are used: (a) by the foreign sovereign itself, (b) for a commercial activity, and (c) in the United States. That reading shelters from execution a wide range of assets of state sponsors of terrorism, such as the museum collection here.
If, on the other hand, § 1610(g) offers a freestanding basis for execution, then victims are not limited to property the sovereign uses commercially in the United States. Victims of state-sponsored terrorism may execute judgments against a broader range of foreign sovereign assets. That’s the view of the Ninth Circuit in Bennett v. Islamic Republic of Iran, 825 F.3d 949, 958-61 & nn. 4-7 (9th Cir. 2016), which held that § 1610(g) provides a freestanding basis for executing judgments for state-sponsored terrorism. That reading should enable the plaintiffs in Bennett to execute on assets that were not used commercially in the United States. See id. at 956-57 (cash in United States that was owed to Iranian state bank for use of credit cards in Iran). That same reasoning would extend to the museum collection at issue here.
Whether § 1610(g) provides a freestanding basis also affects the procedures that victims of state-sponsored terrorism must follow to execute their judgments. We dealt with procedural issues in both Wyatt v. Syrian Arab Republic, 800 F.3d 331, 342-43 (7th Cir. 2015), and Gates v. Syrian Arab Republic, 755 F.3d 568, 575-77 (7th Cir. 2014) (alternative holding). In both cases, we adopted the view that § 1610(g) is freestanding, which broadens the rights of victims v. state sponsors of terrorism, while still assuring due process of law.
The details of the textual arguments are laid out well in Bennett and Rubin, and I will not repeat them. Both readings of the text, I believe, are reasonable, meaning that the text’ is ambiguous. The courts must choose between two statutory readings: one that favors state sponsors of *490 terrorism, and another that favors the victims of that terrorism.
The FSIA contains detailed protections for foreign governments in most civil litigation. But over the years, Congress has added special provisions for cases of state-sponsored terrorism, including the addition of § 1610(g) as part of § 1083 of Public Law 110-181, the National Defense Authorization Act for Fiscal Year 2008. Those special provisions, including § 1610(g), work together to make it easier for victims of state-sponsored terrorism to pursue foreign sovereign assets in the United States. In 2008, Congress even took the unusual step of applying the new provisions to pending cases. P.L. 110-181, § 1083(c). See also Bennett, 825 F.3d at 961-62 (legislative history of 2008 amendments shows broad intent to facilitate execution of judgments against any property owned by state sponsors of terrorism).
I recognize that “no legislation pursues its purposes at all costs,” and that it “frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute’s primary objective must be the law.” Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987). But in interpreting an ambiguous statutory text, we can and should draw on statutory purpose and legislative history. We must choose one side or the other. The balance here should weigh in favor of the reading that favors the victims. We should not attribute to Congress an intent to be so solicitous of state sponsors of terrorism, who are also undeserving beneficiaries of the unusual steps taken by the Rubin panel.
We should continue to follow Gates and Wyatt, and we should avoid creating a conflict with Bennett, especially in a case where the en banc court cannot act. We should allow the Rubin plaintiffs to pursue broader categories' of Iranian property, including the Persepolis Collection at the University of Chicago.